CATTARAUGUS COUNTY.—HON. ALFRED SPRING, SUR-ROGATE.—November, 1884.

### REFORM SOCIETY *v.* CASE.

*In the matter of the judicial settlement of the account of* THOMAS CASE, *and another, as executors of the will of* JOHN C. REYNOLDS, *deceased.*

Testator, who was an illegitimate child, and died leaving no parent or issue, by his will gave his property to his executors in trust, directing that, after the death of A., who was to have the use of his farm for life, the same "be sold, and the proceeds be let out at interest, and the said interest be annually paid to" a charitable corporation named, but making no provision for the management of the property after the death or resignation of the trustees selected by him. A. having died, the executors converted the real property into money which they invested, and paid the interest annually to the corporation legatee. Upon the judicial settlement of their account, had upon their application for leave to resign their trust,—

*Held,* that the bequest was not void, as contravening the statute against perpetuities, but that the principal of the fund should be transferred to the corporation, after deduction of commissions and the expenses of the accounting.

CONSTRUCTION of will upon executor's accounting. The facts appear in the opinion.

E. T. BARTLETT *and* W. W. WARING, *for the Reform Society.*

THE SURROGATE.—The deceased, John C. Reynolds, was an illegitimate person and left no issue. In his

last will and testament, the testator leaves his property in trust to his executors therein named, and, after giving one Ann Reynolds the use of his farm during her life, directs his executors to make the following disposition thereof: "From and after the decease of the said Ann Reynolds I do further direct that the said farm be sold and the proceeds be let out at interest and the said interest be annually paid to the American Female Reform Society."

The executors duly qualified, and, in the execution of their trust, and in compliance with the provision quoted, converted the real estate into cash, and, since the decease of the said Ann Reynolds, which occurred in November, 1869, have paid the interest annually to said legatee, the said Reform Society.

The executors have recently resigned, and, in proceedings for the judicial settlement of their account, have presented and filed their account in this court, showing a fund in their hands of about $1,300, the proceeds arising from the sale of the farm. The Reform Society appear in response to a citation in this proceeding, and ask that the *corpus*, the principal, of this fund be paid over to the society, instead of having the same invested and the interest paid through the medium of an administrator with the will annexed.

In construing a will, the testator's real intention is the primary and paramount object to be sought (4 Kent Com., 534). An examination of testator's surroundings, in connection with the will itself, frequently gives some clue to his probable intention on the disposition of his property as set forth in his will.

In this case, testator had no children and left no parent, and after the death of the life tenant there was no one in any way dependent upon him, or having claims upon his bounty, so that the equitable claims of this residuary legatee, this charitable institution, are not inferior to those of any one else.  He does not limit or qualify this bequest to the Reform Society, and this is a significant circumstance, indicating that he desired the Reform Society to receive all of his property after the expiration of the life tenancy.

He makes no provision for the management of this property after the death or resignation of the trustees selected by him—an omission not liable to be made if it was intended to keep this fund forever invested and controlled by others than the beneficiary.

The testator never intended to die intestate as to the bulk of his property.  With no next of kin, a man of his intelligence would not go through the formality of executing a will and still designedly leave the residuum, the major part, of his property undisposed of, to pass to the State.  Persons in his unfortunate condition would be particular to a finical degree in making an unequivocal and permanent disposition of their property.  Intestacy to them means a dissipation of their estates.

It has been repeatedly held that, where a testator devises the income and rents of certain real estate, without qualification, and without disposing of the body of the land, the devise carries with it the land itself (4 Kent Com., 536 ; Jennings v. Conboy, 73 *N. Y.*, 230 ; Hatch v. Bassett, 52 *N. Y.*, 359 ; Monarque v. Monarque, 80 *N. Y.*, 320 ; Patterson v. Ellis'

Ex'rs, 11 *Wend.*, 200; Parker v. Plummer, *Cro. Eliz.*, 190; Smith v. Post, 2 *Edw. Ch.*, 523; 3 Wash. Real Prop., 450).

The analogous doctrine, that a bequest of the interest of personal property carries with it the principal itself, where there is no limit or qualification to such bequest, is equally well established by authority (Earl v. Grim, 1 *Johns. Ch.*, 494; Hatch v. Bassett, 52 *N. Y.*, 359; Thompson v. Conway, 23 *Hun*, 621; Adamson v. Armitage, 19 *Vesey*, 416).

The fact that the corporation in this case is the legatee does not alter the rule, as that is endued with the power of perpetual existence (Angel & Ames on Corporations, *Sec.* 8).

Eleemosynary corporations are organized for the purpose of perpetually distributing funds entrusted to them, and hence partake of the "immortal" character attributable to all corporations (Angel & Ames [*supra*], *Sec.* 39).

The Revised Statutes of this State provide that "the absolute ownership of property shall not be suspended by any limitation or condition whatever, for more than two lives in being at the death of the testator" (2 R. S. [6th ed.], 1167, § 1).

Either this bequest is absolutely and unqualifiedly a gift to the Reform Society, or else it is void *in toto*, as being repugnant to the statute. Inasmuch as a gift can readily be spelled out of the will itself, there is no necessity for the strained construction required to avoid the will.

A decree may be entered adjusting and allowing the account filed, and directing the transfer, to the

society, of the body, the principal, of the fund remaining after the expenses of this accounting and the commissions of the executors.