(Supreme Court, Appellate Division, Third Department.   September 20, 1904.)

1. EXECUTORS—ACCOUNTING—SURROGATE'S COURT—JURISDICTION.

Under Code Civ. Proc. § 2606, providing that where an administrator dies a person interested in the estate may require the executor of the administrator to account for the acts of the deceased as administrator, the Surrogate's Court has power in a proceeding to settle an executor's accounts to determine a claim against the estate of another which was administered by the executor's testatrix.

2. SAME—CREDITS.

Where an executor was required to account for the acts of his decedent as administratrix of the estate of her deceased husband, such executor was entitled to an allowance for payments made by deceased to contestant, who claimed as heir of such deceased husband.

3. SAME—COMMISSIONS—REAL ESTATE—TRANSFER.

An allowance of commissions to an executor on the transfer of real estate to an heir was erroneous.

4. SAME—ILLEGAL DEBTS.

On an accounting of the executor of contestant's deceased mother, involving an account of the mother's acts as administratrix of contestant's father, contestant was entitled to object to a credit to her mother for £300 for the payment by her mother of the father's illegal debts which constituted debts of honor.

5. SAME—WILLS—CONSTRUCTION—ACCUMULATIONS—INVALID PROVISIONS.

Testatrix, after providing for certain legacies and annuities, declared that all the remainder of her property she gave to H., in trust to pay contestant, her sole surviving daughter, $1,200 annually, to care for testatrix's real estate, pay taxes thereon, etc., and to accumulate the surplus for the benefit of contestant. *Held* that, the accumulation being void, contestant was entitled to the entire residue of the property.

6. SAME.

Testator devised the residue of his personal estate in trust to pay the annual income from three-fifths parts thereof to B. during her life, for her sole and separate use during any coverture, and after her death to be disposed of on trust for such child or children of B. as shall attain

the age of 21 years, or, dying under that age, shall leave issue; and in case there be no such child, and the said B. shall be a widow at the time of her death, in trust for the benefit of any person or persons as she shall by will appoint; and in default of such appointment, or in case she shall be married at the time of her decease, in trust for the persons who would have been entitled thereto under the statute of distribution had she died possessed of the trust property intestate, and without having been married. *Held* that, B. having left a child who attained the age of 21 years, the property went to such child or his issue, though B. died leaving her husband surviving, since the provisions for B.'s death while married were on condition that there should be no child or grandchild living.

Appeal from Surrogate's Court, Fulton County.

Judicial accounting by James Hull as executor of the last will and testament of Mary Emily Hull, deceased. From a surrogate's decree settling the account, both the executor and Helen Bushby Williams appeal. Reversed.

The proceeding is in the matter of the judicial settlement of the accounts of James Hull, an executor, etc., of the last will and testament of Mary Emily Hull, deceased. Upon the presentation of the account, Helen Bushby Williams, a daughter of the deceased, appeared, and filed objections thereto. The matter was referred to a referee, who made his report, which was confirmed by the surrogate, resulting in the decree from which the appeals have been taken.

The property of Mary Emily Hull received by this executor came under the will of one Tobias Frere, an English subject. The material parts of that will are as follows:

"I give and bequeath to my said executors and trustees all the residue of my personal estate upon trust after payment of my funeral and testamentary expenses and debts, and subject to the payment of and provision for the said annuity, to pay transfer * * *. And as to another of the said three-fifths parts of my said residuary personal estate to pay the annual income therefrom to my daughter Eliza Rebecca Bushby, wife of Stephen Bushby, during her life and for her sole and separate use during any coverture and so that she may not have power to alienate or charge the same or any part thereof by way of anticipation, and after her decease to be possessed of the same fifth part upon trust for such child or children of the said Eliza Rebecca Bushby as shall attain the age of 21 years, or dying under that age shall leave issue; or being a daughter or daughters shall attain that age or marry; and if more than one, in equal shares, and as to the share of my daughter for her sole and separate use, and in case there shall be no such child and the said Eliza Rebecca Bushby shall be a widow at the time of her death, upon such trusts for the benefit of any person or persons as she shall by her last will direct or appoint, and in default of any and subject to any such appointment, or in case she shall be married at the time of her decease, upon trust for the person or persons who at the time of her decease would, under the statutes for the distribution of the estates of persons dying intestate be entitled to the same in case she should have died possessed thereof intestate and without having been married, and if more than one, in the like shares."

Eliza Rebecca Bushby mentioned in said will died March 4, 1892, being then the wife of one Bauldrey, who still lives. Prior to her death she had born a son, Harry Maxwell Bushby, who died intestate October 13, 1878, more than 21 years of age, leaving a widow, Mary Emily Bushby, and two daughters, one of whom died thereafter under 3 years of age, and Helen Maxwell Bushby, now Williams, contestant in these proceedings. After the death of Harry Maxwell Bushby his widow married this executor, Hull. In March, 1893, Mary Emily Bushby Hull was appointed administratrix of the estate of Harry Maxwell Bushby, her late husband, and received from the proceeds of the will of Tobias Frere personal property in securities of the value of £9,320 sterling, and a further mortgage of £1,200 on property at Battersea, England. Thereafter, and on the 20th day of January, 1900, Mary Emily

Hull died at the city of Gloversville, Fulton county, leaving a last will and testament, in which her husband, James Hull, was appointed executor, and leaving an only daughter, Helen Maxwell Bushby, who afterwards, and upon the 14th day of September, 1902, intermarried with one Williams. James Hull qualified as executor and testamentary trustee under said will, and thereafter filed his petition in Surrogate's Court for a judicial settlement of his account as such executor. The material part of the will of Mary Emily Hull, after providing for certain legacies and annuities, is found in the seventh clause thereof, which reads as follows: "Seventh. All the rest, residue and remainder of my said property, both real and personal and wherever situate, I give, devise and bequeath to James Hull, in trust, nevertheless, to invest and keep the same invested, collect all the income thereof, and from and out of the income of all my said property my said executor and trustee is hereby directed to pay to my daughter, Helen Maxwell Bushby, the annual sum of twelve hundred dollars, payable in monthly installments; said executor and trustee is directed to take proper care of all my real estate, keep the same in good repair, and insure, pay the taxes and. assessments thereon, and do any and all acts necessary and proper in the care thereof. Should the income of all my property exceed the amount necessary to pay all annuities and charges thereon, I direct that the surplus shall be accumulated in the hands of my said executor and trustee and by him, at his discretion, paid to my daughter, Helen Maxwell Bushby, the same as the above provision of twelve hundred dollars." Upon the 30th day of December, 1902, Helen Maxwell Williams executed what purported to be a release unto herself of all her right, title, and interest to the rents, profits, and income of the estate. This release was executed in an attempt to free the estate from the provisions of the trust under chapter 452, p. 939, of the Laws of 1893. In 1896 this statute was carried in an amended form into the Real Property Law, becoming section 83 of that act (Laws 1896, p. 572, c. 547), and the next year it was re-enacted as section 3 of the Personal Property Law (Laws 1897, p. 508, c. 417). Thereafter, and in June, 1903, Phebe Mahala Van Brocklin, one of the annuitants under the will of Mary Emily Hull, executed what purported to be an assignment of her annuity to Helen Bushby Williams, of New York City. It has been assumed in the argument that the other annuitant is dead.

To the account of this executor this contestant, Helen Maxwell Bushby, filed objections. The matters were referred to a referee, who reported, first, that all the moneys in the hands of Mary Emily Hull came from the estate to Tobias Frere; after the death of the sister of the contestant, the contestant was entitled to one-half of the moneys received by Mary Emily Hull from the Frere estate under the Frere will. As to the remaining moneys of the estate of Mary Emily Hull the referee reported that by reason of the release filed by the contestant under the act of 1893 as afterwards re-enacted in the real and personal property laws, she was entitled absolutely to all the residue of said property. He allowed as a credit to Mary Emily Hull the sum of £320 for expenses of administration upon the estate of Harry Maxwell Bushby. He also allowed the executor $50 commissions upon a transfer of a $5,000 piece of real property by the executor to the contestant. The real property was in the name of Mary Emily Hull. He refused to allow to contestant interest upon the one-half of the Harry Bushby estate because of the fact that she had received her support therefrom.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

H. D. Wright, for executor.
Frank Talbot, for contestant.

SMITH, J. At the threshold of this discussion it is necessary to determine the extent of the surrogate's jurisdiction. Assuming to account as executor of Mary Emily Hull under her will, this executor has been compelled to account for the moneys which she received as administratrix of the estate of Harry Maxwell Bushby. The ob-

jection first raised upon this appeal is that any claim this contestant had against the estate of Mary Emily Hull by reason of moneys received by her as such administratrix, is a claim that should be adjusted by action brought in another court, the determination of which is beyond the jurisdiction of the surrogate. Ordinarily, the surrogate has not the power to determine a claim made against an estate except upon written stipulation and consent of all parties. Under section 2606 of the Code of Civil Procedure it is provided that, where an administrator dies, a person interested in the estate may require the executor of the administrator to account for the acts of the deceased as administrator. James Hull, therefore, was liable, under this section, to account not only for his own acts as executor of the estate of Mary Emily Hull under the will, but for her acts as administratrix of the estate of Harry Maxwell Bushby, and to the extent of the interest of this contestant in the estate of Harry Maxwell Bushby this executor was bound to account to the contestant, provided moneys came into his hands from the estate of Mary Emily Hull sufficient to satisfy said claim. In accounting under the will of Mary Emily Hull, he cannot ignore her liability for the moneys received as administratrix of her first husband. All the parties were before the court for the determination of the extent of that liability, and the surrogate clearly had jurisdiction under section 2606 of the Code of Civil Procedure to determine the questions raised thereupon. See Matter of Accounting of Hicks, 170 N. Y. 195, 63 N. E. 276; Fowler v. Hebbard, 40 App. Div. 108, 57 N. Y. Supp. 531.

As the executor was thus required to account for the acts of his decedent as administratrix of Harry Maxwell Bushby, we are at a loss to understand why the referee declined to allow him to show payments made by the deceased to the contestant. It is claimed here that the questions were not in proper form; that a book of the decedent showing these payments was attempted to be introduced in evidence without proper proof thereof. The answer to this claim would seem to be that the referee excluded the evidence specifically upon the ground that the inquiry was not "within the scope of or contemplated by the order of the surrogate in this matter." This was one of the objections urged by the contestant. To hold that the referee was invested with power to determine the liability of Mary Emily Hull to the contestant by reason of moneys received from the Bushby estate and to hold that he was without power to consider what payments had been made upon that liability is clearly paradoxical. The referee has reported, and the Surrogate's Court has confirmed the report, fixing the liability of the estate of Mary Emily Hull to the contestant for moneys received as administratrix of Harry Maxwell Bushby, and this has been done while refusing to allow the representative of Mary Emily Hull to show payments upon that liability. It is not an answer to this erroneous ruling that the contestant was not allowed interest upon this fund by reason of the fact she received her support from her mother. The payments may have been largely in excess of such interest, and the estate may have been entitled to a credit not only for the interest which would otherwise have been due, but also for the payments made. These matters can only be determined upon a complete accounting.

For this error of the referee the executor is clearly entitled to a new hearing upon this account.

This conclusion renders it unnecessary to discuss the other questions raised by the appeal. Inasmuch, however, as they must again arise, it is perhaps proper that we express an opinion as to some of them. It is difficult to sustain the granting of the allowance of $50 to the executor upon the transfer of the real estate to the contestant. This would seem to be unauthorized under Phœnix v. Livingston, 101 N. Y. 451, 5 N. E. 70; Matter of McGlynn's Estate, 41 Misc. Rep. 156, 83 N. Y. Supp. 975; Roosevelt v. Van Alen, 31 App. Div. 1, 3, 5, 52 N. Y. Supp. 304. The credit to the estate of £300 paid for illegal debts is not warranted in law. While it is hardly conceivable that a natural child should object to a credit to her mother for the payment of her father's debts of honor, this contestant has the legal right so to object, and, if she chooses to assume that position, the court must sustain her objection.

The counsel have argued at length upon the construction of the will of Mary Emily Hull, and the effect of the release to herself by the contestant of her right to the income and proceeds of the residue under said will. The assignment by the annuitant was made after the repeal of the statute authorizing the destruction of the trust by a release of one entitled to the rents and profits. It is doubtful if that release can be effective to accomplish the object sought while the part of the rents and profits to which the contestant was entitled was indefinite and undetermined. Without, however, deciding this question, we are of opinion that under the will of Mary Emily Hull the entire residue of the property passed to the contestant. The executor claims that she is entitled only to the income therefrom, and that at her death the property must descend as the property of an intestate. The provision for the accumulation of income is confessedly void. That the testatrix intended that her daughter should have the corpus as well as the income of the property seems, under all the facts surrounding the making of the will, to be unquestionable. There is a legal presumption against intestacy, and it is not probable that the testatrix intended the substance of her property should go to strangers, as it would if left as intestate property upon the death of the contestant. The contestant was her only child. There is nothing to indicate that the relations between them were not those of affection which are ordinarily found. There is an evident intent by the provision for the accumulation of income and by the attempted trust to put a restraint upon the daughter's control, and subject it in part to the control of her husband, this executor. Not for a moment, however, can a doubt be entertained that it was the intention of the testatrix that both principal and income of the property should ultimately go to the benefit of her daughter. This construction of the will is sustained, I think, by authority. In Thomas v. Troy City National Bank, 19 Misc. Rep., at page 474, 44 N. Y. Supp. 1042, Justice Chester lays down the rule thus:

"If the will should be held to contain simply a gift of the use and income of the estate, instead of the fee or the absolute title, there being no disposition in it of the remainder, it should be held, under the authorities, that there was a devise and bequest of the fee by implication to the parties to whom

the income is given. Masterson v. Townshend, 123 N. Y. 458, 25 N. E. 928, 10 L. R. A. 816; Phillips v. Chamberlain, 4 Ves. 51; Earl v. Grim, 1 Johns. Ch. 497."

In Paterson v. Ellis' Ex'rs, 11 Wend. 298, Justice Savage says:

"It is also a rule of law that a devise of the interest or of the rents and profits is a devise of the thing itself, out of which that interest or those rents and profits may issue. [Citing authorities.] The rule, however, is to be understood with some limitations. Where the intention of the testator to give only the use is clear, manifest, and undisputed, the rule must yield to the stronger force of the intention; but where it is doubtful whether the use only or the absolute ownership was intended to be given the rule has been allowed to have a controlling effect. It is by no means clear that in the case before us the use only was devised. If there is any doubt, it is whether the ownership was not intended to be given, and the rule to which I have adverted comes with great propriety to our aid in solving the question."

In 2 Williams on Executors, 478, the rule is stated:

"Where the interest or produce of a fund is bequeathed to a legatee, or in trust for him, without any limitation as to continuance, the principal will be regarded as bequeathed also."

This provision for the payment of the income of this fund is not limited in the will to the life of the contestant, but is "without limitation as to continuance." This fact, in connection with the failure to provide for a remainder, in view of the strong inference that the whole fund was intended for the benefit of the contestant, would seem to preclude the construction which should declare this property intestate property upon the death of the contestant.

It is further contended that under the will of Tobias Frere upon the death of Eliza Rebecca Bushby, in case she shall be married at the time of her decease, the trustees are to hold the property in trust for the persons who, at the time of her decease, would, under the statutes for the distribution of the estate of persons dying intestate, be entitled to the same. It is therefore claimed by the executor that, inasmuch as Eliza Rebecca Bushby died leaving her husband, one Bauldrey, her surviving, the trust still continues under the will of Tobias Frere. We do not so read the will. In case Eliza Rebecca Bushby shall leave children who shall attain the age of 21 years, or, dying under that age, shall leave issue, the direction of the will seems to be that the property shall go to such child, or its issue if the child be dead. The provision as to the death of Eliza Rebecca Bushby while married seems to be upon condition that there shall be no child or grandchild living. The practical construction put upon this will has given the property to Mary Emily Hull as administratrix of the estate of Harry Maxwell Bushby. For the moneys thus received her executor now must account.

The surrogate's decree is reversed, and a new trial granted, with costs of appeal to executor from the fund. All concur; PARKER, P. J., and HOUGHTON, J., in result.